BABCOCK VS. THE CITY OF FOND DU LAC, imp.

*September 6 — September 25, 1883.*

*Void Tax: Effect of voluntary payment: Pleading.*

1. One who voluntarily pays a void tax with knowledge of the facts rendering it void cannot recover back the amount so paid, nor can he maintain an action to restrain the application of the money raised by such tax to the purpose for which the tax was levied.

2. The complaint in an action to restrain a city from paying out moneys raised by a tax claimed to be void, alleges that the plaintiff and other tax-payers of the city have been compelled to pay a tax of three and one half per cent., while the tax in other cities similarly situated is but from one and one half to two per cent. *Held*, that such allegation does not negative a voluntary payment of the tax.

APPEAL from the Circuit Court for *Fond du Lac* County. On June 23, 1882, the defendant city, in pursuance of an authority given in ch. 31, Laws of 1882, entered into a contract, containing the provisions, restrictions, and conditions therein required, with the defendant The Elgin Tubular Iron Tower Company, for the erection and construction of five towers, for which the city agreed to pay $5,861.07, and upon which towers were to be placed what were known as the Brush electric lights. At the time of making the contract the valuation of the taxable property in the city, as appeared from the last prior assessment for state and county taxes, was conceded to be $2,772,265, five per centum of which was $138,613; and the bonded indebtedness at the time was $153,500, or nearly $15,000 in excess of five per centum of such valuation. The trial judge found that, besides the amounts levied in December, 1882, for the school, bond, library, and poor funds, the estimates of the amount of taxes to be levied for the general fund were $25,000 to pay loans made on account of the treasurer's default, $6,000 for street lighting, $6,000 for towers, and $28,700 for other items for general fund, making $65,700 as the total amount

Babcock vs. The City of Fond du Lac, imp.

of that fund, but that of that amount there was only actu-ally levied $36,927.74; and that as no reduction or striking out of any item in the estimate had been shown, the infer-ence was that a proportionate reduction of all the items in the estimate had been made, which left only a little over $3,372 as being levied to pay for the erection of towers, and that the same had been actually collected, and was in the treasury at the time of making the order appealed from. It also appears that April 2, 1883, the sum of $5,861.07 was voted and allowed by the common council of the city to the company aforesaid for work and material furnished by it and towers built under said contract, and the mayor and clerk of said city were therein and thereby instructed to draw an order on the city treasury in favor of said Elgin Tubular Iron Tower Company for said sum of $5,861.07.

This action was to restrain the city from issuing, signing, or delivering any order, warrant, or other evidence of debt to the said company, or paying any money to it on account of the contract aforesaid, or for any work done or materials furnished by the company to the city during the year then past, and to have said contract declared not binding, illegal, and void. The complaint alleges, among other things, " that the plaintiff and other tax-payers of said city have been compelled to pay, during the past year, a tax of three and one half per centum upon the assessed valuation of their property in said city, while the per centum of tax in cities similarly situated is but from one and one half to two per cent. on such valuation." On April 4, 1883, a temporary in-junction was issued upon the complaint, and an order for the defendants to show cause April 13, 1883, why such temporary injunction should not be continued. On the hearing of such order to show cause, and the above facts being made to appear, the temporary injunction was modified, and in the order modifying the same, the city, its officers, agents, and clerk, were authorized to issue and draw an order upon the

treasurer of the city for the said sum of $3,372, and to pay said order when drawn to the Elgin Tubular Iron Tower Company, to apply towards the payment for said electric light towers; and it was therein further ordered that the said order of injunction be, and the same was thereby, continued in force as to the balance, to wit, the sum of $2,489.07, until the further order of the court to be made upon the trial of the action. From that portion of the order authorizing the city, its officers, agents, and clerk, to issue and draw an order on the treasurer of the city for $3,372,. and to pay the same when drawn to the Elgin Tubular Iron Tower Company to apply towards the payment of electric light towers, the plaintiff appealed.

For the appellant there was a brief by *Spence & Hiner*, and oral argument by *Mr. Spence*. They contended, *inter alia*, that the plaintiff, being a resident and tax-payer of the city, is entitled to an injunction to prevent the incurring of indebtedness in excess of the constitutional limit (*Springfield v. Edwards*, 84 Ill., 626; *Beauchamp v. Supervisors*, 45 id., 274); and may also enjoin the municipality from misapplying its money, on the ground that it will prevent a multiplicity of suits. *Colton v. Hanchett*, 13 Ill., 615; *Perry v. Kinnear*, 42 id., 160. He may also maintain an action, as in this case, to have the contract annulled, and, as subsidiary to that, the payment of the money enjoined. See, also, *Holmes v. Baker*, 16 Gray, 259; *Strohm v. Iowa City*, 47 Iowa, 42; *West v. Ballard*, 32 Wis., 173; *Judd v. Fox Lake*, 28 id., 583. The bonded indebtedness of the city being in excess of five per cent. of the assessed valuation of taxable property, it was powerless to contract an indebtedness for any purpose whatever. *Springfield v. Edwards*, 84 Ill., 626; *Law v. Huck*, 87 id., 385; *Howell v. Peoria*, 90 id., 104; *Prince v. Quincy*, 105 id., 138, 215; *French v. Burlington*, 42 Iowa, 614; *Hebard v. Ashland Co.*, 55 Wis., 145; *Council Bluffs v. Stewart*, 58 Iowa, 642.

*Geo. P. Knowles*, for the respondent, argued, among other things, that the payment of the tax, as alleged in the complaint, was a voluntary payment. *Powell v. Supervisors*, 46 Wis., 210; Cooley on Taxation, 569. After the completion of the work for the city, payment therefor will not be restrained at the suit of one who voluntarily paid the tax raised for that purpose. *Tash v. Adams*, 10 Cush., 252; *Kilbourne v. St. John*, 59 N. Y., 21; *Doolittle v. Broom Co.*, 18 id., 155; *Roosevelt v. Draper*, 23 id., 318; *Whitney v. Union R'y Co.*, 11 Gray, 359; *Grey v. O. & P. R. R. Co.*, 1 Grant, 412; *Burden v. Stein*, 27 Ala., 104; *Long v. Cross*, 5 Jones' Eq., 323.

CASSODAY, J. Has the plaintiff any such interest in the drawing and issuing of the order upon the city treasurer for $3,372 in his hands, and the application of the same in payment of the electric light towers built by the company for the city under the contract specified, as would authorize a court of equity to enjoin the same, even assuming that the contract was void? The trial court held that he had not. This was upon the ground that the sum named had been imposed upon the tax-payers of the city for the very purpose of having it so applied, and that the plaintiff having, voluntarily and without protest, paid his proper share of the amount, he was no longer in a position to prevent its application to the very purpose for which it was levied, paid, and appropriated. It is claimed, however, that the trial court was in error in holding that the plaintiff had voluntarily and without protest paid his proper share of the tax imposed for that purpose. Counsel say there is nothing in the complaint, answer, or affidavits to support such assumption, and that the only allegation in the complaint touching the point is the one where it is alleged that the plaintiff and other tax-payers were compelled to pay three and one half per centum on the assessed valuation of their property

during the past year, and that that is an averment not of voluntary payment, but of a forced and compulsory payment. The clause of the complaint referred to, however, is but a part of a sentence which obviously alleges nothing more than that the plaintiff and other tax-payers in *Fond du Lac* had, during that year, been compelled to pay a much larger per centum upon the assessed valuation of their property in said city than the tax-payers of other "cities similarly situated." But if the tax was unauthorized and he paid it upon compulsion, his remedy was in a court of law upon a proper showing to recover it back.

This is a bill in equity, and to maintain the action the plaintiff was bound to present, affirmatively, such a case as would entitle him to equitable relief. The substance of all the allegations of the complaint is that the plaintiff was a resident, freeholder, and tax-payer in the city, and that the contract was void because it created a debt in excess of the constitutional limitation.* There is no allegation that any warrant or other process had ever been issued to enforce the collection of the tax. There is no allegation that the plaintiff had not paid his share of it, nor that it had been exacted, much less that it had been wrongfully exacted. The plaintiff does not seek to recover the money back. The action is not brought to prevent any injury, nor to resist any burden, nor to restrain the diversion of any fund from the purpose for which it was raised to a different use. On the contrary, the only object of the action seems to have been to prevent the money from being applied to the very purpose for which the tax was levied, the money paid and appropriated, and to cancel the illegal contract. It is conceded that the plaintiff had paid his full share of the tax, and upon the whole record we think the court was justified in holding that he paid it voluntarily and without protest. Certainly it must be deemed to have been paid voluntarily, because the payment is nowhere shown to have been made under protest,

nor under any apparent compulsion of legal process. *Parcher v. Marathon Co.*, 52 Wis., 390.

At the time of payment did the plaintiff know the facts alleged as invalidating the tax? He certainly must have known of the existing indebtedness of the city and the constitutional limitation, for he was a resident, freeholder, and tax-payer in the city. As stated by the trial judge, the towers had been erected by the company in compliance with the contract. "The plaintiff must have known of the contract and of the erection of these structures. They were not hid under a bushel, but their construction was known, open, and visible to every resident of the city. Like all other structures, the company expected to be paid for their work and materials. The common council, without objection, proposed to and did raise a part, at least, of the necessary sum to pay therefor by taxation." These remarks seem to have been justified by the case made on the hearing. At all events, the plaintiff nowhere negatives the possession of such knowledge. He must succeed, if at all, upon affirmative allegations and proofs, and not upon inferences, conjectures, and presumptions. The levy of taxes included the sum named to pay for the towers.

Knowing all these facts, the plaintiff voluntarily and without protest paid the tax. Having done so, he could not maintain an action to recover back the money so paid. It is settled that one who voluntarily pays a void tax, with knowledge of the facts rendering it void, cannot recover back the amount. *Powell v. Supervisors*, 46 Wis., 210; *Mayor of Baltimore v. Lefferman*, 4 Gill, 425; *S. C.*, 45 Am. Dec., 145, and cases there cited. This must be so where the money has not been paid in violation of any law, nor for any unjust or immoral purpose. The constitutional restriction is against the creation of a debt in excess of the five per centum, and not against a tax-payer voluntarily paying a void tax when so levied. It nowhere attempts to punish

the tax collector nor tax-payer, nor prohibit the latter from making payment, nor provide for his recovering back the money in case he does make payment. He may successfully resist payment if he desires. So he may voluntarily pay if he will. Whether he does the one or the other depends upon his own volition. Here the plaintiff, in his exercise of the right of free choice, concluded to voluntarily pay, and did pay without protest. Having thus parted with his money, with full knowledge of the facts, he thereby lost all right to reclaim it. Having no right to that portion of the $3,372 contributed by himself, he certainly has no right to any of the balance which was voluntarily contributed by other tax-payers similarly situated. Precluded from all right to any part of the sum named, he has no interest in it, nor right to control or prevent its distribution to the purposes for which it was raised. Certainly, there is nothing inequitable in the city or its officers appropriating or paying out the sum named to the very purpose for which the plaintiff and other tax-payers voluntarily paid it into their hands.

There are no equitable considerations why the court, at the instance of the plaintiff, should interpose to prevent the doing what the plaintiff and other tax-payers voluntarily put it in the power of the city and its officers to do. The contribution having been voluntarily made to a particular fund for the purpose of having it applied to a particular object, the plaintiff, as such contributor, cannot now successfully invoke the aid of equity to prevent such application. There is no suggestion that he paid through any mistake, imposition, or fraud. Interposition is sought against the application because the plaintiff voluntarily paid, when he was under no obligations to pay. Such interposition merely could be of no possible benefit to the plaintiff. The fact that he voluntarily deprived himself of the money paid is no sufficient reason in equity for withholding it from the party for whose benefit

it was raised. Such interposition would not give restitution, nor prevent any injury, nor secure any right, nor redress any wrong. It would merely prevent a benefit to another at the instance of one who has voluntarily precluded himself from all interest and benefit in the sum sought to be controlled. The facts clearly distinguish the case from any of those cited by the plaintiff's counsel. In several of those, money raised by taxation for legitimate purposes was sought to be diverted to illegitimate uses. It is enough to say that this is not such a case.

This disposes of the only question raised by this appeal, and renders it unnecessary to consider the constitutional question so elaborately discussed by counsel, notwithstanding it seems to have been decided in favor of the appellant.

*By the Court.*— That portion of the order of the circuit court appealed from is affirmed.