Minshall, J.
A question arises in limine as to the proper construction of the pleading demurred to, the answer and cross-petition of the defendant below. It is claimed that there is no averment that the goods were delivered by the plaintiff as in performance of the contract of subscription to the capital stock of the defendant. The averment is, that under said contract the defendant “applied” for the goods charged in the account sued on, “and received from the plaintiff said goods under and in performance of said contract.” This must, as we think, be held to mean that theyj were delivered by the plaintiff as claimed by the defendant. They could not otherwise have been received from the plaintiff in pursuance of the contract. The most that can be claimed as to the averment is, that it is indefinite. If so, then it should have been raised by motion and not by demurrer. The Trustees of School Section 16 v. Odlin, 8 Ohio St. 293, 297.
*49 If, then, the subscription of the Iron Company to the capital stock of the Railway Company is a valid one, the plaintiff, on the averments of the answer, has no right to recover, unless upon the facts stated, it has the right to sue as for goods sold and delivered, and recover as for goods that had been delivered upon a contract it had no power as a company to make. So that the determination of the questions, (1) whether the plaintiff below could make a valid subscription to the capital stock of the Railway Company, and, if not, (2) whether it could recover back what it had delivered in performance thereof, will dispose of the right of the plaintiff to recover for the goods claimed to have been sold and delivered, and, of the claim of the defendant to recover the balance alleged to be due upon the subscription.
We think it well settled as a result of the decisions in this state, as well as elsewhere, that an incorporated company cannot, unless authorized by statute, make a valid subscription to the capital stock of another; that such subscription is ultra vires and void. Mr. Morawitz, in stating this to be the law, observes : “ The right of forming a corporation is conferred by the incorporation laws only upon persons acting individually, and not upon associations; moreover, it would, under ordinary circumstances, be a violation of the charter of an existing company to subscribe for shares in a new company and assume the resulting liabilities.” (Priv. Corp. § 433.)
There has been no direct decision upon the question by this court, but such has been the uniform holding elsewhere. Railroad Company v. Railroad Company, 31 N. J. Eq. 475; Franklin Co. v. Lewiston Savings Bank, 68 Maine, 43; Railroad Company v. Collins, 48 Ga. 582. These cases all proceed upon the principle that the powers of corporations organized under legislative statutes are such, and such only, as those statutes confer, or that may fairly be implied therefrom. This doctrine was clearly announced and applied in Straus v. Eagle Ins. Co., 5 Ohio St. 59, and has been firmly adhered to in this court. Railroad Co. v. Hinsdale, 45 Ohio St. 556, 573.
*50 No claim is made by tbe defendant that the Iron Company had any express statutory authority to use its capital or assets, in aid of the construction of a railroad by subscription to its capital stock or otherwise. The only averment, as to this, is, that it, the Iron Company, conceived that it would be benefited by the reduction of the price of coal at Cleveland, its place-of business, and the market which the construction of the road would afford for its manufactures, and by these considerations was induced to make the subscription. But all this can be of no avail in the face, at least, of the prohibition contained in § 3266 of the Revised Statutes, that, “No corporation shall* employ its stock, means, assets or other property, directly or indirectly, for any other purpose whatever, than to accomplish the legitimate objects of its creation.” There was then, as we-think, no authority whatever in the Iron Company to make a valid subscription to the capital stock of the Railway Company, and no recovery can be had upon it.
2. The next question then is, whether the plaintiff, the Iron Company, can recover the value of the goods delivered by it in. part performance of the contract on which the subscription, was made? We shall treat the question as if the action had been in plain terms for such a recovery, without embarrassing-it with a doubt as to whether such a recovery could be had in-the form of a suit for goods sold and delivered.
It is quite certain that the simple fact that the plaintiff was under no legal obligation to deliver the goods, the contract of subscription being void, is no ground for a recovery of their value against the defendant, although the plaintiff may have-. been ignorant of the law affecting the contract. Bish. Cont. § 615 and § 81. To warrant a recovery in such case, it must, further appear that the delivery was made in ignorance of the-facts, or else that it was an involuntary one. Clark v. Dutcher, 9 Cowan, 674, 684; Lamborn v. County Commissioners, 97 U. S. 181; Babcock v. Fond du Lac, 58 Wis. 230; Savings Institution v. Linder, 74 Pa. St. 371; Inhabitants of Livermore v. Inhabitants of Peru, 55 Maine, 469; Bish. Cont. § 631;. Pol. Cont. 409, and notes. But there is no ground for either of these claims. The delivery was a voluntary one, with full *51 knowledge of the facts, which forbids a recovery of the value of the goods so delivered, unless some reason exists why corporations should be assisted against the consequences of their voluntary acts, in cases where private persons would not.
The fact that corporations are generally not liable for the unauthorized acts of their agents, and may repudiate the same, does not seem to furnish a solution of this question. The principle which denies a recovery in this class of cases will be found to rest upon considerations of general convenience, to which corporations as well as natural persons are required to conform. Remedial justice is established to aid those who cannot aid themselves without the use of violence, in obtaining what as a matter of right is their due. It does not invite litigation, and declines its assistance to those who voluntarily place themselves in the situation of becoming suitors. The Iron Company was at-liberty by its agents to accede to the demand of the railroad company for the delivery of the goods on the subscription, or to decline to do so. It chose, with a full knowledge of the facts, to deliver the goods; and there is no sound reason why it should be aided in a law-suit made necessary by its own voluntary act, that would not apply with equal force to a natural person. "Where there is no ignorance of the facts, or coercion, it is said, in Glass Co. v. City of Boston, 4 Met. 181: “If the party would resist an unjust demand, he must do so at the threshold. The parties treat with each other upon equal terms, and if litigation is intended by the party of whom the money is demanded, it should precede payment. If it were not so, the effect would be to leave the party who pays the money, the privilege of selecting his own time and convenience for litigation ; delaying it, as the case may be, until the evidence, which the other party would have relied upon to sustain his claim, may be lost by lapse of time and the various casualties to which human affairs are exposed.” In some cases stress is laid upon the inconvenience it would be to the other party, who may receive the money as his own, and, acting upon that belief, so dispose of it as to make it exceedingly inconvenient, if not impossible, to repay it. Brisbane v. Dacres, 5 Taunt. 144, Gibbs J. 152; Clark v. Dutcher, 9 *52 Cowan, 674, 684. In any view, however, the reason of the rule applies with like force to a corporation as to a natural person.

Judgment reversed and eause remanded to the court of common pleas, with direction to overrule the demurrer to the answer of the defendant, and for further proceedings.