Bissell, P. J.
The facts will be stated according to the concessions in the proceedings and pleadings, and as they may well be assumed to be established by the practically uncontradicted testimony on certain propositions.
In 1891, the Colorado Springs Company was the owner of certain real property in El Paso county, which was subject to taxation and on which they were bound, so far as this record shows, to pay the taxes. At all events as between themselves and the county authorities they were bound to pay them. There may have been some agreement between them and third parties, whereby others were bound to pay the assessments, but no agreement is established which shows any transfer of the fee which would release the company from this obligation. McGovney, and possibly others jointly with him, had some arrangement with the company for the purchase or transfer of the land, and the option may have and probably did include a duty to pay the taxes. Whatever may be the fact respecting this matter, it is unimportant be *276 cause there is nothing to show a transfer of the fee or a release of the company from its duty. When the taxes became due in 1892, McGovney who held this contract or option, undertook to pay them. What he did is very clearly shown. On the 12th of July, 1892, he went to the treasurer’s office, gave a check for a sum sufficient to pay the levy on some particular part of the company’s property, and possibly included therein, though it is unnecessary to determine this matter of fact, the amount due from him on other property either belonging to himself or others. The treasurer took the check and marked the taxes on the books as paid, and possibly, though this does not clearly appear and is quite in doubt on the record, issued a tax receipt. The cheek was entered on the cash book and'carried and counted as a cash item from that time forward until the events which we shall state. The amount of the original check was reduced from time to time by the payment of small sums or by crediting on it the amount which was coming to McGovney by reason of the redemption of lands from sale and otherwise. Whenever these reductions or payments were credited, he gave a n,ew check for the sum unpaid. The checks were always carried on the books as cash items, and were probably allowed by the commissioners on their semiannual examination. What obligation the treasurer thereby assumed in favor of tbe county, or what rights the county may have acquired against him or his bondsmen, is wholly unimportant and cuts no figure in the determination of the county’s rights in the enforcement. of the obligations of the owner of the fee. We, therefore, neither consider nor decide it, and simply make this suggestion to disclose the reason why we pay no further attention to it.
The personnel of the treasurer’s office changed several times and finally in 1896, the then treasurer, in November, advertised a portion of the property for sale on the 10th of December of that year. The company noticed the advertisement and its representative went to the treasurer’s office and produced its check for the amount which was claimed to be due, amount *277 ing to some $866, and took up the check which had been given by McGovney and which still remained in the possession of the then treasurer. At this time the representative stated that he probably knew more about that check than the treasurer did, and wanted to pay the taxes. He asked for a receipt. It was given and stated that the treasurer who was then Mr.’ Steinmetz, had received the money and credited it to the East End Addition’s taxes. Shortly afterwards this representative came in and wanted a regular tax receipt which was thereupon made. The check was cashed and the funds went into the county treasury. Subsequently the company filed a petition with the board of county commissioners and requested a reimbursement, stating that the taxes had been paid before the last check was given and that the company therefore had a claim against the county for the amount of funds received thereon. The county refused to pay and from this decision an appeal was taken to the district court where the company had judgment and the county prosecutes the appeal.
The whole contention rests on the theory that the acceptance of the McGovney check by the treasurer in 1892, and the marking of the taxes as paid on the books was payment, the company thereby relieved, and its subsequent liquidation of the claim was without consideration and void and they had a right to recover the amount paid. There are many reasons why we cannot concede the proposition. It is well settled by all the authorities that there is only one way by which taxes can be paid and that is with money. Such is the provision of the statute and such is the well recognized rule established by all the courts by which the question has been considered. It is equally clear that the receipt of a check and the marking of the taxes as paid on the books, and the delivery of a receipt, is not payment, nor is it conclusive against the county in a controversy between the taxpayer and the county authorities. McLanahan v. City of Syracuse, 18 Hun, 259; Elliot v. Miller, 8 Mich. 132; Bank of Orange County v. Wakeman, 1 Cow. 46; Mumford v. Armstrong, 4 *278 Cow. 553; 2 Desty on Taxation, 699; Kahl v. Love, 37 N. J. L. 5. The rule applies to all official transactions and the receipt of a note, draft or check for the payment of taxes, or by a sheriff for the payment of an execution, in no manner discharges the lien which the authorities have on the land by the levy, nor the lien which the officer acquires by the levy of his execution. These public obligations can only be discharged by the payment of the sum due in cash or what becomes its equivalent by subsequent payment. A note, draft or check does not relieve the taxpayer from his obligation to pay, nor does he establish his right to recover back money which he has afterwards paid in settlement of the taxes, unless he is able to prove his payment by showing the actual discharge of the taxes levied and laid. Whatever presumption may arise under certain circumstances — as from an entry on the books — -is in no manner conclusive as between the taxpayer and the. county authorities, and it appearing by the proof that the taxes in point of fact have not been paid, the plea of payment is not satisfied and the taxpayer is remediless to get back what he has turned over in ultimate liquidation. It would be a very odd doctrine to hold that because a check had been given to the treasurer for the payment of taxes, which check was not paid, that the treasurer by the simple entry on the books of the satisfaction, could thereby conclude the county authorities and prevent the collection of the revenue. The treasurer occupies no such position of agency with reference to the county organization as to be able to bind them by such proceedings. The taxes are an absolute lien on the land which can only be discharged by payment. The giving of a check or draft or note is not payment, nor under any ordinary circumstances would it be payment as between private parties. It might be that there would be equitable considerations which would estop an individual from contending that a claim had not been paid when he had received a check or note or draft in its liquidation, and another had altered his condition on the faith and strength of it. We know of no reason by which this principle *279 can be so extended as to cover a case of this description. It has been adjudged in a case directly to the proposition. It was there held, as it always must be, that the owner of the land may prevent a sale or may recover bis property on proof that the taxes were paid before the sale. This burden and this duty however is not discharged by the production of books which show payment when evidence is offered which establishes that the taxes were actually not paid before the sale. The presumption of payment does not arise because of the duty of the owner to pay, nor is there any conclusive presumption derivable from such entries. Especially must it be true in a case like the present, where the testimony is clear to the proposition that the taxes were never paid except by a check which was not cashed by the bank and never became good, and when it is further clearly proven that the owner of the property undertook to pay and gave its own check to take up the one unpaid. Ankeny v. Albright, 20 Penn. St. 157.
It is likewise held in well, considered cases that the treasurer has no authority to receive checks or drafts and that after the receipt is given and the taxes marked as paid on the books, the officer may proceed to collect. Barnard v. Mercer, 54 Kan. 680; Houghton v. City of Boston, 159 Mass. 138. These authorities very clearly demonstrate the county had the right to institute proceedings to collect the taxes. Having demonstrated that the check which had been originally received by the then treasurer remained unpaid, it might proceed to enforce the owner’s liability.
We do not regard the evidence offered to the point of the difference between the check and the probable liability of the company as at all important in determining their right to sue the county and get back the money. It does not appear the treasurer collected the whole sum due. The amount of taxes unpaid plus the penalties and interest would exceed the amount of the company’s check. Apparently the county was very willing to receive the principal of the obligation, or at least a part of it and possibly a small portion of the *280 penalty and interest in order to get the claim liquidated without trouble. Whatever the facts may be in this regard it is a matter which does not affect the right of the company to recover the amount of the check which it gave the county. If it was permitted to pay a less sum than the total of the ■principal plus penalties and interest it is a matter of which they cannot complain and which in no manner establishes their right to maintain this suit to get back what they did pay.
It may likewise be very gravely questioned, although we do not put the decision directly on that ground, though we might if there was no other sufficient basis for it, whether the payment was not a voluntary one and the plaintiff therefore without the right to sue. This has been held in many cases and is tolerably well supported. Cahaba v. Burnett, 34 Ala. 400; Babcock v. City of Fond du Lac, 58 Wis. 230; Raisler v. Mayor of Athens, 66 Ala. 194; Peterborough v. Lancaster, 14 N. H. 382; Commissioners v. Ruckman, 57 Ind. 96. The payment in this case ivas undoubtedly voluntary. The company undertook to relieve the property from taxes which were a lien on it, and apparently due from the company to the county, and they might or might not have paid it as they saw fit, and what they did was of their own volition. If the taxes were not a lien, or if in fact they had been paid and there was no valid claim against the company therefor, a sale would not have legally injured them or disturbed their title. If the taxes had been paid a sale would not pass title nor affect the rights of the company in the property. The trouble was, the company was well satisfied that it was an exceedingly debatable question whether the taxes had ever been paid, and whether the .circumstances would support a bill to set aside the sale on the ground that the taxes had been paid. Being thus in doubt they went into the treasurer’s office and paid the money and took up the other check. It was a voluntary act and it is exceedingly doubtful Avhether they could ever recover it back. The fact that the property was advertised for sale in no manner affects the proposition, nor would this *281 be taken as a legal compulsion which would prevent the application of the principle of voluntary payment. DeBaker v. Cavillo, 52 Cal. 473; Bucknall v. Story, 46 Cal. 495.
For these reasons we conclude the Colorado Springs Company had no cause of action against the county to recover this money and the entry whereby this right was adjudged was erroneous. The judgment must be reversed and the cause sent back for further proceedings in conformity with this opinion.

Reversed.