STAMPER, Appellant, vs. HOPKINS and others, Respondents, and TOWN OF WASHINGTON, Appellant.

*February 15—June 3, 1924.*

*Towns: Authority of town board: Purchase of road machinery: Levy of tax: Payment by taxpayers: Application of moneys paid: Taxpayer's action to enjoin payment for machinery: Laches.*

1. Sub. (2), sec. 1223, Stats. 1921, authorizing town boards of supervisors to provide for the construction and repair of highways and bridges, authorizes the town board to purchase machinery for such purposes only when the electors have made provision to meet the expenditure and have in fact authorized it by voting a tax therefor under sec. 60.35. p. 132.
2. A town meeting of a town with a population of less than 500 having levied a tax for road purposes in excess of the limit prescribed by sec. 1240, Stats. 1921, the town board had no authority or power to levy taxes, not voted at the town meeting, for the purpose of buying road machinery. p. 133.

3. Where the town board was without authority to levy a tax for the purchase of road machinery or to dedicate moneys paid into the town treasury for any specific purpose, the facts that the taxpayers had voluntarily paid the tax, and that the money thus levied was in the town treasury for the purpose of paying for the road machinery and probably could not be recovered by the persons who paid it, do not pledge the fund to the unlawful use.  p. 137.

4. The action of a taxpayer of the town to restrain the payment of town orders issued for the payment of the road machinery will not be dismissed, though payment may be enforced in an action brought against the town for that purpose.  p. 137.

5. Nor was the taxpayer barred by laches from suing to restrain the payment of town orders issued for the machinery, where it was purchased in the latter part of May, 1920, and the taxpayer commenced his action in March, 1921, and it did not appear to what extent the fact that the machinery was used in repairing the highways during the summer of 1920 was called to the attention of the taxpayers, the action being for the benefit of all, of whom some might and others might not have known of such purchase.  p. 138.

APPEAL from a judgment of the circuit court for Rusk county: JAMES WICKHAM, Circuit Judge.  *Reversed.*

Plaintiff is a resident and taxpayer of the town of *Washington*, Rusk county.  He brought this action to restrain the payment of certain town orders issued for the payment of a tractor and gravel loader purchased by the town board in May, 1920, to be used in repairing highways in the town.

At the annual meeting of the town held in April, 1920, a tax of $5,010 was voted by the electors for the following purposes: for general fund, $800; for county roads, $1,000; for wheelers intended for road work, $400; for purchase of gravel pits, $300; for machinery shed, $150; and for improving certain designated town highways, $2,360.  In the month of May, 1920, the town board, after securing advice from the district attorney and the attorney general that it had the power so to do, purchased a tractor for the agreed price of $4,150 and a gravel loader for the agreed price of $775, which machinery was duly delivered to the

town and was used in work upon the highways, to a certain extent at least, during the years 1920 and 1921. There were issued in payment for said machinery the following town orders: May 25, 1920, order No. 38, on tractor, $100; May 29, 1920, order No. 41, on tractor, $1,500; May 29, 1920, order No. 42, on tractor, $800; May 29, 1920, order No. 43, on tractor, $1,750; and May 29, 1920, order No. 44, on gravel loader, $775. On the 3d day of March, 1921, Charles Savord, the person to whom town orders Nos. 42, 43, and 44 were issued, surrendered said orders to said town and there were issued to him in lieu thereof five other orders for the same aggregate amount, each for the sum of $665, each dated March 3, 1921, and each recited that it was payable out of the machinery fund of said town which was then collected or in process of being collected. On the 31st day of March, 1921, town orders 230 and 232 were purchased by the *Merchants & Farmers State Bank of Fall Creek* from said Charles Savord, said bank paying the face value therefor. On the 30th and 31st days of March, 1921, the *State Bank* purchased of said Charles Savord orders Nos. 232, 233, and 234, paying face value therefor. Each of said banks purchased said orders believing them to be valid.

The complaint demands that town orders Nos. 38, 41, 42, 43, 44, and Nos. 230 to 234, inclusive, be declared void and that the treasurer be enjoined from paying said orders or any part of them with moneys in his hands as such treasurer, and that the town of *Washington* and its officers be enjoined from paying for said tractor and road machinery for which said orders were issued. The trial court held that the orders were valid obligations of the town and entered judgment dismissing plaintiff's complaint. From the judgment so entered plaintiff appealed.

For the appellants there were briefs by *D. W. Maloney* and *T. M. Thomas,* both of Ladysmith, and oral argument by *Mr. Maloney.*

For the respondent *Merchants & Farmers State Bank of Fall Creek* there were briefs by *Farr & MacLeod* of Eau Claire, and oral argument by *A. W. MacLeod*.

*W. H. Frawley* of Eau Claire, for the respondent *State Bank of Fall Creek*.

The following opinion was filed March 11, 1924:

OWEN, J.  Sub. (2), sec. 1223, Stats., authorizes town boards of supervisors "to provide machinery, implements, stone, gravel and other material on such terms as may seem proper, and hire such machinery, laborers and animals as may be required to make, build, pave and repair highways and bridges." In *Indiana R. M. Co. v. Lake,* 149 Wis. 541, 136 N. W. 178, it was held that this statutory provision authorizes the town board to purchase machinery only when the electors have made provision to meet the expenditure and have in fact or in effect authorized it.  Sec. 60.35 provides that no town "order shall be signed or issued for the disbursement of any money of such town until the tax for the payment of such order shall have been voted by the electors of such town."  As the electors at the town meeting voted no tax for either a tractor or gravel loader (the only tax levied for machinery being $400 for wheelers intended for road work), it is at once apparent that the town board had no power or authority to purchase the machinery or issue town orders in any amount for the payment thereof. Up to this point it is clear that the town orders were void and constitute no liability against the town.  It is claimed, however, that certain subsequent action of the town board, which will now be adverted to, operated to legalize these void town orders.

The court found that on the 17th day of December, 1920, at a meeting of the town board held for the purpose of auditing the accounts of said town and for the levying of taxes, it was voted to levy taxes on the taxable property

of the town in certain amounts, for state, county, and school purposes, and also for the following purposes of the town: general fund, $800; roads, $6,100; and machinery, $4,825. It will be noticed that the amount which the town board pretended to levy for the general fund corresponded to the amount voted by the electors at the annual meeting for that purpose. There is a substantial increase in the amount levied by the town board for roads over that levied by the annual town meeting. The levy of $4,825 for machinery by the town board was in addition to any levy made for that purpose by the town meeting and is within $100 of what the town board agreed to pay for the tractor and gravel loader. The town clerk carried these amounts into the tax roll and, for the most part, the taxes so assessed were paid by the taxpayers of the town, it appearing that in a few instances taxes were paid under protest and a few were returned delinquent to the county treasurer. Although the action was tried more than a year after the taxes were so paid, it does not appear that any taxpayer brought action to recover as illegal any portion of his or her taxes paid under protest.

The inclusion of the $4,825 for machinery in the tax roll was clearly illegal. The town board had no power or authority to levy taxes for any such purpose. Under sec. 1240 the town board has certain authority in the matter of assessing highway taxes. But it being conceded that the town of *Washington* had a population of less than 500, the amount of taxes which could be levied for highway purposes in that town was limited by said sec. 1240 to $2,000 (now $3,000). *Mueller v. Cavour*, 107 Wis. 599, 83 N. W. 944. This amount had been exceeded by the town meeting and the town board was without authority to levy any additional tax even for highway purposes.

But it is said that the taxpayers having voluntarily paid the tax, and the money now being in the town treasury, and

having been paid in for the express purpose of paying for this particular machinery, the fund thus brought to the town treasury should be devoted to the purposes for which it was levied upon and paid by the taxpayers. We are referred to three decisions of this court which have a more or less direct bearing upon this question. They are *Babcock v. Fond du Lac,* 58 Wis. 230, 16 N. W. 625; *State ex rel. Wunderlich v. Kalkofen,* 134 Wis. 74, 113 N. W. 1091; *McGowan v. Paul,* 141 Wis. 388, 123 N. W. 253.

In *State ex rel. Wunderlich v. Kalkofen* the petitioner presented a claim against the town of Rolling, which was disallowed by the town board of audit. At the annual town meeting, however, the claim was allowed by the electors and a motion was adopted to raise by taxation a sum sufficient to pay it. The tax thus voted was extended on the tax roll, resulting in such amount being collected by the town treasurer. Nevertheless, the town officers refused to issue an order for the amount of the claim. The petitioner brought *mandamus* proceedings to compel the town board to issue a town order for the amount of the claim as allowed by the annual town meeting. The court said, in effect, that it was immaterial whether the respondent's claim as originally presented to the town board of audit and to the electors at the town meeting was a legal demand or not, or whether it was competent for the electors to allow the claim if it was not a legal demand; that where the taxpayers of a municipality have submitted to taxation for a certain purpose, and the money has actually been accumulated in the hands of the public treasurer, and neither the taxpayers nor electors have in any manner changed their position, the town officers cannot refuse to disburse the money for the purpose for which it was raised.

In *Babcock v. Fond du Lac* it appears that, at a time when the city had exceeded its constitutional debt limit, it entered into a contract for the erection of certain towers for which the city agreed to pay $5,861.07. The trial court

found that thereafter the common council levied for the purpose of paying for said towers the sum of $3,372, and that the same had been actually collected and was in the treasury at the time the action was commenced to restrain the payment thereof to the contractor. It was held that the amount had been voluntarily paid into the city treasury by the taxpayers of the city for the purpose of being applied on the tower contract; that the city had authority to construct the towers, but, in view of its having exceeded the debt limit, it had no authority to incur indebtedness therefor; that as money had been levied and paid into the treasury for a specific purpose, which purpose was within the legitimate powers of the municipality, and as it could not be diverted to any other purpose (*Miller v. Milwaukee,* 182 Wis. 549, 196 N. W. 235, and cases there cited), it should be devoted to the purposes for which it was paid into the municipal treasury.

In *McGowan v. Paul* it appeared that the town of Milton in Rock county contained the unincorporated village of Milton Junction. At the annual town meeting the electors voted in favor of putting in cement sidewalks on streets where abutting property owners were willing to pay one half of the expense, and levied a tax therefor. Thereafter the officers of the town contracted with one B. P. Crossman to build cement sidewalks where designated by them, one half to be paid by the abutting owners and one half by the town. Crossman was carrying out such contract when the action was commenced to restrain the town officers from carrying it out on their part. For a number of years it had also been customary for the town to pay for maintaining street lights in the unincorporated village. The action also challenged the authority of the town to pay out money for that purpose. It will be at once appreciated that the town had no authority to pay moneys from the town treasury either for the purpose of maintaining street lights or laying sidewalks in the unincorporated village, and the court

restrained the payment of town moneys for either of such purposes. The case was distinguished from that of *Babcock v. Fond du Lac, supra,* in that the city of Fond du Lac had corporate authority to build the towers, which authority was merely suspended during the time when its debt limit was exceeded, while in the *McGowan Case* the town had no authority whatever to devote money to the purpose there under consideration.

The instant case differs from any of the three cited. It differs from the *McGowan Case* in that here the town had corporate authority to purchase the machinery in question. In this it is like the *Fond du Lac Case,* but it differs from that case in this respect: the common council of the city of Fond du Lac had power to contract for the building of the towers without authorization by the electors and had power to levy the tax in payment thereof. Had the tax been levied and in the course of collection at the time the contract was made, it would have been lawful. Acting pursuant to these powers, though irregularly of course, it did levy a certain amount for the specific purpose of constructing the towers. In the instant case the town board was without a semblance of authority to levy a tax for the purchase of this machinery, and certainly was without authority to dedicate moneys paid into the town treasury for any specific purpose. The fact that the money had been paid into the treasury of the city of Fond du Lac where it constituted a fund devoted to a special purpose pursuant to the action of the common council, the legal authority for the levying of taxes in that city, coupled with the principle that money raised for a specific purpose cannot be devoted to a different use, were very important factors in that case. These factors are entirely absent in the instant case. The trial court held that by virtue of the tax arbitrarily extended on the tax roll by the town clerk there is now a machinery fund in the town treasury of $4,825. With this we cannot agree. There has been no action by any proper authority earmarking this fund as a

machinery fund. It was clandestinely levied and inconsiderately paid, and while it is now in the town treasury and probably beyond the power of any taxpayer to recall, it must be held to be there for general town purposes and subject to such uses as the electors of the town may direct.

The *Babcock Case* and the case of *State ex rel. Wunderlich v. Kalkofen, supra,* go quite far enough in sanctifying illegal taxation, and this is especially true of the latter case. There is little point in limiting the powers of municipalities if town officers may clandestinely carry into the tax roll and collect from the taxpayers who unwittingly pay, sums of money which such town officers have in mind for specific unauthorized purposes, if it be held that such sums of money, after coming into the municipal treasury, stand pledged to such unlawful use. Such a doctrine would permit municipalities to utterly ignore their statutory limitations. While we approve the *Babcock Case,* we are not disposed to extend the principle thereof to the facts of this case.

It is further contended that, because the machinery was received by the town officers and used for town purposes, the town is under obligation to pay therefor even though the proceedings leading up to its acquirement were not in conformity with the statute. There is authority in this state to sustain the general proposition that a municipality may not avoid payment of moneys loaned to it, or payment for property delivered to it, for legitimate municipal purposes, on the ground of mere irregularities in prescribed procedure, among which may be cited *First Wis. Nat. Bank v. Catawba,* decided herewith (183 Wis. 220, 197 N. W. 1013). However, that question is not presented in this case. The question here is whether the town orders are valid. If they are void, the complaint should not be dismissed, even though payment for the machinery may be enforced in an action brought against the town for that purpose. This principle is clearly established in *Doyle v. Gill,* 59 Wis. 518, 18 N. W. 517.

It is next contended that the complaint should be dismissed because of laches on the part of the plaintiff. The machinery was purchased in the latter part of May, 1920. This action was commenced in March, 1921. The machinery was used in repairing the highways of the town to some extent during the summer of 1920, but how generally this fact was called to the attention of the taxpayers of the town does not appear. As the town has a population of less than 500, it is reasonable to presume that it is a sparsely settled community. This action was brought for the benefit of the whole body of taxpayers of the town. Some of them may, and others may not, have known of the purchase of this machinery. As said in *Cawker v. Milwaukee,* 133 Wis. 35 (113 N. W. 417), at p. 38:

"To hold the whole body of taxpayers estopped from questioning the validity of a void contract and preventing the payment of public moneys in discharge thereof because the contractor has done his work would substantially emasculate the principle that general taxpayers may by action in equity set aside unlawful contracts and restrain public officers from paying out public funds in discharge of work done under such contracts."

That case is all the authority required to show that the doctrine of laches or estoppel should not be applied to the plaintiff here. It points out the difference in the application of the doctrine where mere private relief is sought and cases brought for the vindication of public rights, and points out that the power to successfully maintain an action for the vindication of public interest has never been limited to cases where the work has not yet been done, "and, if it were, there would be few cases where unfaithful public officials and designing contractors could be prevented from despoiling the public treasury. The right does not depend upon the speed with which the law is broken. Indeed, it is held that money already paid on an illegal contract may be recovered back if the transaction be marked by haste or collusion,

although this court has held that there may be cases where equity will deny this extreme relief upon a showing of entire good faith. *Frederick v. Douglas Co.* 96 Wis. 411, 71 N. W. 798. The application of the principle of estoppel to a general taxpayer's action has been carried no further than this in this court, nor is it conceived that it ought to be carried further." Although the position of the banks which hold these town orders is unfortunate, it is not perceived how their interest can be protected in this action without unduly restricting the rights of the public and without pressing the doctrine of estoppel to the detriment of public interest further than either precedent or sound public policy permits.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment in accordance with this opinion.

A motion for a rehearing was denied, with $25 costs, on June 3, 1924.