THOMSON, Respondent, vs. TOWN OF ELTON, Appellant.

*February 28 — March 19, 1901.*

*Municipal corporations: Money borrowed without authority: Implied contract to repay: Ultra vires: Pleading.*

| 109 | 589 |
|---|---|
| d112 | [1]357 |
| 112 | [2]358 |
| 109 | 589 |
| 114 | [1]134 |
| 114 | [1]136 |

1. Where the officers of a town, assuming to act in its behalf and having the appearance of authority, borrowed money, representing that it was to be used for lawful town purposes, and it was so used, and the lender acted in good faith, the law implies a promise to return the money, upon which an action for money had and received will lie.

2. The doctrine of *ultra vires* cannot be invoked by a municipal corporation, in the absence of some prohibitory law, to protect itself from liability to refund money which it has received and of which it has had the legitimate benefit, where the individual dealing with the corporation has parted with his money believing that the corporation had a lawful right to acquire it.

Thomson vs. Town of Elton.

3. A general allegation that the money received by the municipality was used for lawful municipal purposes, so that it had the full benefit thereof, is sufficient upon demurrer. At most such a complaint would be open to a motion to make more definite and certain.

APPEAL from an order of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

Action for money had and received, the following facts being stated in the complaint as constituting plaintiff's cause of action, formal parts omitted:

On June 18, 1894, the chairman and clerk of the defendant town, for the purpose of obtaining for it from Frances E. Babcock a loan of $3,000, represented to her that they were duly authorized by such town to obtain such a loan on five years time at eight per cent. interest per annum payable annually, and that the money when obtained would be used for proper and legitimate town purposes. Said Frances E. Babcock believed such representations to accord with the truth, and, relying thereon, loaned $3,000 to defendant, and delivered the same to the chairman of its board of supervisors. Thereafter such chairman turned the money over to the town treasurer and it became a part of the public money of the town. Thereafter such money was used for legitimate town purposes, so that defendant had the full benefit thereof. The chairman and clerk of defendant agreed in its behalf that the money should be repaid at the end of five years from June 18, 1894, with interest at the rate of eight per cent. per annum payable annually. Defendant has neglected and refused to pay said loan, or any part thereof, or the interest thereon except interest to June 18, 1896, and $49.04 of the interest due July 6, 1897. The town has repeatedly ratified such loan and the use thereof. Prior to June 18, 1899, the county of which defendant is a part, pursuant to action taken by its county board, paid defendant $928 to be used in discharge of said loan so far as the same

would go for that purpose. Instead of its being so used, it was diverted from the purpose intended, but was used for legitimate town purposes, so that defendant had the full benefit thereof.

Before March 24, 1900, the claim against defendant on account of the facts stated was for value duly assigned to plaintiff, who is the owner and holder thereof. After such assignment, plaintiff duly filed a verified claim with the defendant, to be placed before its auditing board as required by law. Thereafter an annual town meeting of the town was held, and more than ten days elapsed subsequent to such meeting before the commencement of this action. Favorable action as to plaintiff's claim was neither taken by the board of audit of the town nor the electors at such town meeting.

The defendant demurred on the ground that the facts stated were insufficient to constitute a cause of action. The demurrer was overruled. This appeal is from the order entered on such decision.

For the appellant there was a brief by *M. J. Wallrich*, attorney, and a supplemental brief by *Sanborn, Luse, Powell & Ellis*, of counsel, and oral argument by *C. F. Dillett* and *A. L. Sanborn*. They contended, *inter alia,* that the complaint states no cause of action. There is no allegation that provision has been made for the payment of this debt as required by sec. 3, art. XI, Const. This constitutional prohibition is as effectual against an implied as against an express promise. The complaint does not state facts and circumstances which would authorize the town to make an express promise to repay the money, and if the town could not bind itself by an express promise the law will raise no implied promise. If a recovery can be had in this action, the restrictions imposed by the statute and by the constitution are practically of no avail and may be wholly disregarded by the town officers, and any one having money to loan may simply pay

the same into the treasury of the town and recover it back with interest when he sees fit. A case is not stated where the municipality has power to borrow money, for the reason that the existence of circumstances that will authorize a town to borrow money are unusual, and there is no presumption that they exist. See 1 Beach, Pub. Corp. §§ 216–221, 240–251; *Thomas v. Richmond*, 12 Wall. 349; *McDonald v. New York*, 68 N. Y. 23, 23 Am. Rep. 144, and cases cited; *Newbery v. Fox*, 37 Minn. 141, 5 Am. St. Rep. 830; *Mayor v. Ray*, 19 Wall. 468; *Brady v. New York*, 20 N. Y. 312; *Hague v. Philadelphia*, 48 Pa. St. 527; *Nash v. St. Paul*, 8 Minn. 172; *Covington & M. R. Co. v. Athens*, 85 Ga. 367; *Burchfield v. New Orleans*, 42 La. Ann. 235; *Rens v. Grand Rapids*, 73 Mich. 237; *Bogart v. Lamotte*, 79 Mich. 294; *Sutro v. Pettit*, 74 Cal. 332, 5 Am. St. Rep. 442; 1 Dillon, Mun. Corp. § 457; Cooley, Const. Lim. (6th ed.), 261; *Agawam Nat. Bank v. South Hadley*, 128 Mass. 503; *Clark v. Des Moines*, 19 Iowa, 199; *Baltimore v. Musgrave*, 48 Md. 272; *Hodges v. Buffalo*, 2 Denio, 110; *Martin v. Brooklyn*, 1 Hill, 545; *Boom v. Utica*, 2 Barb. 104; *Albany v. Cunliff*, 2 N. Y. 165; *Dill v. Wareham*, 7 Met. 438; *Stetson v. Kempton*, 7 Am. Dec. 145; *Lowell F. C. S. Bank v. Winchester*, 8 Allen, 109; *Litchfield v. Ballou*, 114 U. S. 190; *Marsh v. Fulton Co.* 10 Wall. 676; *Donovan v. New York*, 33 N. Y. 291.

*J. C. Kerwin*, for the respondent, to the point that the money was paid into the town treasury in good faith and used for town purposes, and the law imposes an obligation on the town to do justice, cited *Paul v. Kenosha*, 22 Wis. 266; Beach, Pub. Corp. §§ 222, 226, and cases cited; *Maher v. Chicago*, 38 Ill. 266; *Argenti v. San Francisco*, 16 Cal. 256; Tiedeman, Mun. Corp. § 164, and cases cited; *Norton v. Rock Co.* 13 Wis. 613; 1 Dillon, Mun. Corp. (4th ed.), §§ 459, 460; *Goodall v. Milwaukee*, 5 Wis. 32; *Marsh v. Fulton Co.* 10 Wall. 676; *Waitz v. Ormsby Co.* 1 Nev. 370; *Henderson v.*

Thomson vs. Town of Elton.

*Sibley Co.* 28 Minn. 515; *Chapman v. Douglas Co.* 107 U. S. 348; *Morville v. Am. T. Soc.* 123 Mass. 129; *Clark v. Saline Co. Comm'rs,* 9 Neb. 516; *Pimental v. San Francisco,* 21 Cal. 362; *Frankfort B. Co. v. Frankfort,* 18 B. Mon. 41; *State Board of Education v. Aberdeen,* 56 Miss. 518; *Dill v. Wareham,* 7 Met. 438; *Peed v. McCrary,* 94 Ga. 487; *Louisiana v. Wood,* 102 U. S. 294; *Bank of U. S. v. Dandridge,* 12 Wheat. 74; *Hitchcock v. Galveston,* 96 U. S. 341; *Gassett v. Andover,* 21 Vt. 342; *Scofield v. Council Bluffs,* 68 Iowa, 695; *Polk Co. S. Bank v. State,* 69 Iowa, 24; *Abbot v. Hermon,* 7 Me. 118; *Cullen v. Carthage,* 103 Ind. 196; *State Board of Agriculture v. Citizens St. R. Co.* 47 Ind. 407; *Brown v. Atchison,* 39 Kan. 37; *Sangamon Co. Sup'rs v. Springfield,* 63 Ill. 66; *Smith v. Barron Co.* 44 Wis. 686; 7 Am. & Eng. Ency. of Law (2d ed.), 946, and note 5.

MARSHALL, J. It is considered that this case is ruled against appellant by *Paul v. Kenosha,* 22 Wis. 266, *Smith v. Barron Co.* 44 Wis. 686, *Brodhead v. Milwaukee,* 19 Wis. 624, and *Lafebre v. Board of Education,* 81 Wis. 660,— particularly by the first and last of such cases. The principle of those cases is that municipalities are bound by moral obligations, as well as individuals, and that where, in case of the latter, such an obligation will give rise to a legal liability, it may have the same effect as to a municipality; that if a municipality obtains money of a person by an illegal sale of property to him, or an illegal contract of some kind, not expressly prohibited by law nor tainted by moral turpitude so that court on grounds of public policy will not recognize it, or the relations growing out of it, to grant relief, and such person acts in good faith in parting with his money, believing the same to be for the benefit of the municipality, and the latter uses the money for its legal and legitimate purposes, to that extent the law will imply a promise to return the same, upon which an action for money had and received

will lie. *Justitia nemini neganda est* applies even to a person dealing with a public corporation. Whether that doctrine is a safe rule in public affairs, and will successfully stand the test of experience, may well be doubted. There might be a wide difference of opinion about it if the matter were open for consideration as an original question. The courts in other states are by no means in harmony in regard to it. However, it has been too long the law of this state to be changed by mere judicial action. The way is open for the legislature to deal with the subject at any time. From the fact that the law as declared by the court has stood without any attempt by the legislature to change it for over thirty years, we must presume that it accords with the public will.

Counsel for appellant contend that this case can be distinguished from *Paul v. Kenosha*, which is to some extent true as to the facts, though in no essential particular, it is believed. But certainly there is no difference between the two in principle. In this case the money was obtained by the officers of appellant, assuming to act in its behalf and having the appearance of authority, to be used for lawful town purposes, and it was so used. In the *Paul Case* the money was obtained of the individual in the same way, as a consideration for the sale of bonds previously made for another purpose, issued therefor, and thereafter acquired by the municipality. The reissue of the bonds was illegal, though, as supposed, for a legitimate purpose; and the money was used for such purpose, though the bonds were as worthless as so much waste paper. No reason is perceived why the case would have been different if, instead of making use of the canceled bonds to obtain the money, the city, without authority, had made a new bond for the purpose, or obtained the money without going through the form of issuing a bond at all. The implied promise upon which the recovery was sustained arose, not from the loan of money to the

municipality, nor the mere illegality of the means used to obtain it, but from the fact that the city, having possession of money to which it had no legal right, used the same for lawful municipal purposes. The implied promise sprang into life at the instant the money was used as a part of the public funds and for purposes for which public money would otherwise have been used.

The authorities that support a municipal liability under circumstances above indicated are too numerous to warrant an attempt to cite all of them. *Salt Lake City v. Hollister,* 118 U. S. 256; *Pimental v. San Francisco,* 21 Cal. 351, 362; *Louisiana v. Wood,* 102 U. S. 294; *Read v. Plattsmouth,* 107 U. S. 568; *Gause v. Clarksville,* 5 Dillon, 165, 180; *Allen v. La Fayette,* 89 Ala. 641; *Scofield v. Council Bluffs,* 68 Iowa, 695.

Much time might be spent in reviewing the foregoing and other cases, but it is thought that nothing after all could be added to what has already been said in previous decisions of this court to which we have referred, so we forego further discussion.

It is firmly established here that the doctrine of *ultra vires* cannot be invoked by a corporation, in the absence of some prohibitory law, to protect itself from liability to refund money which it has received and had the legitimate benefit of. That is most generally invoked in cases where private corporations are involved, but it applies just the same to public corporations, where the individual dealing with the corporation acts in good faith,— that is, parts with his money or property to the corporation believing that it has a lawful right to acquire it.

Some complaint is made that, admitting the principle contended for by respondent's counsel, the complaint is insufficient because it does not show, by proper allegations of facts, that the money received by appellant was used for lawful town purposes; that the general allegation to that

effect is a conclusion of law. We cannot agree to that. Whether the money was used for legitimate town purposes or not is a question of mixed law and fact that may properly be pleaded according to the legal effect of the facts. *Iowa Co. v. Mineral Point R. Co.* 24 Wis. 93. At most the complaint was open to a motion to make more definite and certain. In a complaint for money had and received under the old system of pleading, the facts were pleaded according to their legal effect, and it has been repeatedly held that a statement of facts good at the common law in actions like this is sufficient under the Code. Bliss, Code Pl. 299, and cases cited. In *McKinnon v. Vollmar*, 75 Wis. 82, a complaint in such an action, containing the very meager common-law allegations, was sustained. No particulars of the claim were stated in the complaint, and there was no bill of particulars given or demanded. It is possible that the framers of the Code did not contemplate such a result of their work when they said, "The complaint shall contain a plain and concise statement of the facts constituting each cause of action, without unnecessary repetition;" but such construction was adopted by the courts in the state from which we took the Code, before its adoption here, though at a time when there was a strong inclination to hold onto old forms and ingraft them onto the new system so far as possible. That was done, and it is believed the courts went beyond reason in some cases. But in respect to the matter under discussion, it may well be said that if a complaint for money had and received, no more definite in form than is required by the rules of the common law, does not come within the letter of sec. 2646, Stats. 1898, as to containing a plain and concise statement of the facts constituting the cause of action, it cannot be held bad on demurrer, since the statute requires the allegations of a pleading, for the purpose of determining their effect, to be liberally construed with a view to substantial justice between the parties. Sec. 2668, Stats. 1898. That requires

that every reasonable intendment and presumption shall be made in favor of a pleading. *Morse v. Gilman*, 16 Wis. 504; *Miller v. Bayer*, 94 Wis. 123. If the language of a complaint will reasonably admit of a construction that will support it, that construction is to be sought for and adopted when found, instead of one that will condemn it. To that end all facts reasonably inferable from facts expressly alleged are to be deemed set forth and as forming a part of the pleading. *Kliefoth v. N. W. I. Co.* 98 Wis. 495; *Zinc Carbonate Co. v. First Nat. Bank*, 103 Wis. 125; *Valley I. W. Mfg. Co. v. Goodrick*, 103 Wis. 436.

We should say before closing this subject that in *Paul v. Kenosha*, 22 Wis. 266, the allegation as to the use of the money was substantially the same as in the case before us, and it does not appear to have occurred to court or counsel then that the complaint was insufficient. This is the language: "The money was solicited and received by the defendant for the legitimate municipal purposes of the defendant, and not for any other or different purpose. It was placed in the city treasury with the other money and funds of such city, kept and used for municipal purposes, and wholly used by the defendant for its legitimate municipal purposes."

What has been said requires the order appealed from to be affirmed.

*By the Court.*— So ordered.