ANTIGO WATER COMPANY, Appellant, vs. CITY OF ANTIGO, Respondent.

*November 16—December 6, 1910.*

*Municipal corporations: Franchise ordinance: Validity: Contract: Member of council interested: Stockholder of corporation: Estoppel: Ordinance construed: Waterworks: Tests of efficiency: Liability for hydrant rentals: Conditions precedent: Burden of proof.*

1. The contract provisions relating to the furnishing of water for city purposes and the payment of hydrant rentals by the city, contained in a franchise granted to a water company, are within the contemplation of a charter provision prohibiting any member of the common council from being a party to or interested in any job or contract with the city and declaring that any contract in which such member may be so interested shall be null and void.

2. The fact that a member of the common council is a stockholder in a corporation to which such a franchise is granted makes

him interested in a contract with the city within the meaning
of the said charter provision, and renders null and void the en-
tire ordinance embodying the terms of the franchise and con-
tract.

3. Where a waterworks franchise was granted to a private indi-
vidual and assigned by him to a corporation and, after the con-
struction of the plant and its failure to meet the test prescribed
in the franchise, a new ordinance was passed purporting to be
an amendment to the previous one, providing for payment of
hydrant rentals, and omitting a condition of the original ordi-
nance relieving the city from the obligation for such rentals
if the plant failed to meet the requirements of subsequent tests
called for by the city, and at the time of the adoption of such
amending ordinance a member of the council was a stockholder
in the corporation, this fact rendered the latter ordinance void
and left the former in full force.

4. In such case the city was not estopped from asserting the inva-
lidity of the amending ordinance because it insisted on the
agreements embodied therein before it would accept the water-
works plant, or because for over seventeen years it accepted and
paid for the public services therein provided for, or because it
always claimed to act under it in all matters pertaining to the
maintenance and extension of the system and thereby induced
the water company to maintain and operate its plant pursuant
thereto, since (1) most of the acts relied on to work an es-
toppel were equally referable to the original ordinance, and the
additional service required was slight, and (2) because the
water company, equally with the city, must be presumed to
know the law and hence to know that such amending ordinance
was void.

5. Where a waterworks franchise authorized the city from time to
time to demand tests of the efficiency of the plant, and pro-
vided that if the test could not be satisfactorily made owing to
a deficiency in the system the city should be free from obliga-
tion to pay hydrant rentals after ten days until such time as a
test could be successfully made, the water company was bound,
as a condition precedent to its right to recover rentals accruing
later than ten days after an unsuccessful test, to show that the
rentals were earned by the system complying with the require-
ments as to efficiency, even though it continued to furnish and
the city to use water for public purposes; and no question of
forfeiture of rentals earned is involved in such a case.

6. In the absence of any agreement to the contrary it must be held
that the franchise provision contemplated that the tests should

be made under ordinary operating conditions of the plant; and, there being nothing in the evidence to show that the operating conditions were not the usual ones, the water company could not excuse failure by a claim that there must have been an unusual discharge through the service connections which it could not reasonably have anticipated.

7. Where plaintiff set up a claim for hydrant rentals under the contract provisions of the ordinance, and defendant denied liability, alleging that the services were not rendered as provided in the contract, the burden of proof was on the plaintiff throughout the trial to establish its claim by preponderance of the evidence, and defendant was not bound to show wherein the system was deficient in order to relieve itself from liability.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Affirmed.*

By ordinance No. 30½, approved June 12, 1890, the common council of the city of *Antigo* granted W. G. Maxcy the right and privilege of erecting, maintaining, and operating a system of waterworks in the city of *Antigo* for a period of thirty years. This right and privilege was duly accepted and assigned to the plaintiff.

The ordinance prescribed requirements as to buildings, the plant and machinery, mains and pipes, and the establishment and changing of the grades of streets. It contained provisions regarding waste and pollution of the water and its sources; fixed the maximum rates for water furnished to private consumers; made provision for the purchase of the plant by the city; and provided that the plant should be completed on or before the 15th day of January, 1891. The ordinance contained the following provisions regarding the hydrants of the system and their use by the city. Sec. 5 reads as follows:

"Upon the completion of said works they [the waterworks] shall be tested as to their power and capacity. When said works shall throw water, with the aid of their pumping machinery, from any six separate hydrants located in the business part of the city at one and the same time, one stream from each hydrant through 100 feet of 2½ inch rubber hose and a one-inch ring nozzle, to a height of one hundred (100) feet

perpendicularly for a period of five hours in still air, half of said hydrants to be selected by the city and half by the grantee, and if successful the rental for the fire service herein stipulated shall begin and the said city agrees to furnish said grantee, or his assigns, upon said test, a certificate in dupli-cate to that effect. The city shall have the right to require a similar test once a year during the continuance of his fran-chise."

The ordinance provides for the rental of a definite number of hydrants by the city and for additional hydrants on exten-sions; provides that the water company shall furnish free water for public buildings and for flushing sewers; regulates the use of hydrants; and provides for raising funds and for the payment of the hydrant rental. Sec. 12 provides:

"In case a test as prescribed in sec. 6 [sec. 5] should at any time be demanded by the city council and it should be found that such test cannot be satisfactorily made owing to a defi-ciency in said system, then the city of *Antigo* shall be free from obligation to pay the hydrant rental from ten days after date of such trial to such time as a test can be successfully made as above."

Other sections of the ordinance provide for the acceptance of the ordinance, that the acceptance shall constitute a con-tract binding between the parties, and that the water company shall file a bond for the performance of the conditions of the ordinance. The other provisions of the ordinance are not in-volved in this case.

The plant was not completed at the time provided in the ordinance, but on February 1, 1891, a test was made and the company demanded acceptance by the city. Meanwhile one H. E. Humphrey, a member of the common council, had be-come interested in the water company as a shareholder. The city did not accept the plant, and negotiations were had be-tween the city and the company looking to changes in the original ordinance No. 30½. These changes were embodied in a proposed ordinance, amending ordinance No. 30½ and

known as ordinance No. 44, which was adopted by the council on March 12, 1891. The record of the vote by the council adopting this ordinance is: "Moved and seconded that ordinance 30½ as amended be adopted. Motion carried." The vote on the adoption of this ordinance was not "entered by ayes and nays upon the journal of the common council" under the provisions of sec. 3, subch. IX, of the city charter (ch. 173, Laws of 1887), which provides:

"No debt shall be contracted against the city . . . unless the same shall be authorized by a majority of all the members elect of the common council, and the vote authorizing the same shall be entered by ayes and nays upon the journal of the common council."

Sec. 10, subch. XIV, of the charter of the city also provides:

"No member of the common council shall be a party to, or interested in any job or contract with the city, or any department thereof; and any contract in which any such member may be so interested, shall be null and void."

Mr. Humphrey was a member of the common council at the time ordinance No. 44 was adopted and was also at that time a stockholder in the water company.

Among others ordinance No. 44 amended the provisions of ordinance No. 30½ in the following particulars: The city could use open butts on the hose instead of nozzles in flushing sewers; the rental for hydrants was to be payable at the office of the city treasurer; the city was relieved of the duty of inspecting hydrants and this duty was imposed on the company; and the provisions of sec. 12 of the original ordinance, providing that the city should be free from any obligation to pay hydrant rental from ten days after the system was found not to comply as to power and capacity with the required test to such time as such test could be successfully made, was omitted from the ordinance as amended.

After the passage of ordinance No. 44 the city issued a

certificate showing the satisfactory character of the test and acceptance of the waterworks. The receipt of this certificate was acknowledged by the water company through Mr. Humphrey as one of its officers.

The water company has furnished free water as provided in the amending ordinance and as required in the original ordinance No. 30½; made extensions as required by the common council; furnished pressure for service in case of fire alarms; and allowed the city to have the use of the hydrants. The city duly paid hydrant rental until July 1, 1908.

June 27, 1908, pursuant to a resolution demanding a test, adopted June 2, 1908, by the common council, a test was made of the capacity of the waterworks plant. The streams of water were not thrown to the height prescribed by the ordinance for the test, and the test was discontinued before five hours elapsed because of an insufficient supply of water. Upon the bill for hydrant rental for the period from July 1, 1908, to January 1, 1909, being presented to the city, a resolution was adopted by the common council on February 16, 1909, disallowing the claim on the ground that because of the failure of the test to meet the requirements of sec. 5 of ordinance No. 30½ the city was not liable to the water company for hydrant rental until there should be a satisfactory test of the plant, and because no such test had been made during the period covered by the claim after the failure of June 27, 1908.

After the test of June 27, 1908, the city continued to use the hydrants in case of fire, water was taken from them for flushing sewers, the city public buildings were furnished with free water, extensions were made of the water plant on the demand of the council, and no change was made in the use of water by the city from the use in the operation of the waterworks plant as it had existed previously. The council took no official action respecting the unsatisfactory results of the test except to disallow the claim for hydrant rental, as above stated.

This is an action to recover such rentals for hydrants, alleged to be due for the term from July 1, 1908, to January 1, 1909. The city answered denying the obligation and presented a counterclaim for taxes alleged to be due, for which the city had obtained judgment against the water company.

The jury returned a verdict finding that the test made on June 27, 1908, did not meet the requirements of sec. 5 of ordinance No. 30½, and judgment was entered allowing rental for seven days in July, 1908, ordering that the judgment obtained by the city for unpaid taxes should be reduced by the amount allowed as rental for these seven days, and that the plaintiff recover nothing.

This is an appeal from the judgment.

For the appellant there was a brief by *Smart, Van Doren & Curtis,* and oral argument by *E. M. Smart.* They cited on the point of ratification, *Milford v. Milford W. Co.* 124 Pa. St. 610, 17 Atl. 185; *Trainer v. Wolfe,* 25 Pa. St. 279, 21 Atl. 391; *Marshall v. Ellwood,* 189 Pa. St. 348, 41 Atl. 994; *Ft. Wayne v. L. S. & M. S. R. Co.* 132 Ind. 558, 32 N. E. 215; *Findlay v. Pertz,* 66 Fed. 427; *Ashland v. Wheeler,* 88 Wis. 607; *Washburn W. W. Co. v. Washburn,* 129 Wis. 73. They also contended, *inter alia,* that waterworks contracts were not within the purview of the charter prohibition. *Oconto City W. S. Co. v. Oconto,* 105 Wis. 76; *Hurley W. Co. v. Vaughn,* 115 Wis. 470; *State ex rel. Marinette, T. & W. R. Co. v. Tomahawk,* 96 Wis. 73. The case was a proper one for the application of the doctrine of practical construction. *Hurley W. Co. v. Vaughn,* 115 Wis. 470; *Travelers' Ins. Co. v. Fricke,* 99 Wis. 367; *Port Huron v. McCall,* 46 Mich. 565. The city was estopped from asserting the invalidity of the amending ordinance. *Ashland v. N. P. R. Co.* 119 Wis. 204; *Ashland v. C. & N. W. R. Co.* 105 Wis. 398; *Chicago, St. P., M. & O. R. Co. v. Douglas Co.* 134 Wis. 197; *Paine L. Co. v. Oshkosh,* 89 Wis. 449; and many other cases.

The provisions of the original ordinance should be construed as a penalty or forfeiture and not as a condition precedent; the city had estopped itself from claiming such forfeiture, or at least had waived it; and having continued to enjoy the service, it should pay for it. *Chicago H. W. Co. v. U. S.* 106 Fed. 385, 53 L. R. A. 122; *Madison v. Am. S. E. Co.* 118 Wis. 480; *Eureka L. & I. Co. v. Eureka,* 5 Kan. App. 669, 48 Pac. 935; *State ex rel. Att'y Gen. v. Janesville W. Co.* 92 Wis. 496; *Att'y Gen. v. S. & St. C. R. Co.* 93 Wis. 604; *Gates v. Parmly,* 93 Wis. 294; *Kerslake v. McInnis,* 113 Wis. 659; *Wheeling & E. G. R. Co. v. Triadelphia,* 58 W. Va. 487, 52 S. E. 499, 4 L. R. A. N. s. 321; *Wiley v. Athol,* 150 Mass. 426, 23 N. E. 316, 6 L. R. A. 342; *Joplin W. Co. v. Joplin,* 177 Mo. 496, 76 S. W. 960; *Sykes v. St. Cloud,* 60 Minn. 442, 62 N. W. 613; and other authorities.

For the respondent there was a brief by *Morson & McMahon,* attorneys, and *Kreutzer, Bird, Rosenberry & Okoneski,* of counsel, and oral argument by *S. J. McMahon* and *C. B. Bird.* To the point that a stockholder in a corporation is interested in its contracts with the city, they cited, among other authorities, *Brown v. School Dist.* 70 N. J. Law, 762, 58 Atl. 115; *Drake v. Elizabeth,* 69 N. J. Law; 190, 54 Atl. 248; *Milford v. Milford W. Co.* 124 Pa. St. 610, 3 L. R. A. 122; *Grand Island G. Co. v. West,* 28 Neb. 852, 45 N. W. 242; *Hardy v. Gainesville,* 121 Ga. 327, 48 S. E. 921; and to the point that there could be no ratification or estoppel in respect to a void ordinance, they cited numerous cases, among them *Land, L. & L. Co. v. McIntyre,* 100 Wis. 245; *Quayle v. Bayfield Co.* 114 Wis. 108; *Agawam Nat. Bank v. South Hadley,* 128 Mass. 503; *Berka v. Woodward,* 125 Cal. 119, 45 L. R. A. 420; *Caxton Co. v. School Dist.* 120 Wis. 374; *Dullanty v. Vaughn,* 77 Wis. 38; *Smith v. Newburgh,* 77 N. Y. 130; *Cascaden v. Waterloo,* 106 Iowa, 673, 77 N. W. 333; *Gutta Percha & R. M. Co. v. Ogalalla,* 40 Neb. 775, 59 N. W. 513; *Topeka W. S. Co. v. Root,* 56 Kan. 187, 65 Pac. 233; *Cawker*

*v. Milwaukee,* 133 Wis. 35; *Reuter v. Lawe,* 94 Wis. 300, 305; *Bogie v. Waupun,* 75 Wis. 1, 7; *Thomas v. Railroad Co.* 101 U. S. 71, 86; *Le Feber v. West Allis,* 119 Wis. 608; *Allen v. Clausen,* 114 Wis. 244; *Arnott v. Spokane,* 6 Wash. 442, 33 Pac. 1063.   They also argued, among other things, that there was no evidence upon which to base any waiver or estoppel as to the city; that the contract was entire, as to each period at least; and that performance was a condition precedent to recovery.   *Widman v. Gay,* 104 Wis. 277; *Tilton v. J. L. Gates L. Co.* 140 Wis. 197, 205; *National K. Co. v. Bouton & G. Co.* 141 Wis. 63; *Williams v. Thrall,* 101 Wis. 337; *Manthey v. Stock,* 133 Wis. 107, 110; *Kaukauna E. L. Co. v. Kaukauna,* 114 Wis. 327; *Manitowoc S. B. Works v. Manitowoc G. Co.* 120 Wis. 1; and other cases.   There was no voluntary acceptance of service such as would render the city liable.    *Genni v. Hahn,* 82 Wis. 90, 92; *Manitowoc S. B. Works v. Manitowoc G. Co., supra.*

Siebecker, J.   The first question raised presents the inquiry: Is ordinance No. 44 void because Mr. Humphrey was a stockholder of the *Antigo Water Company* and a member of the common council of the city of *Antigo* at the time this ordinance was adopted?   The city charter of *Antigo* (subch. XIV, ch. 173, Laws of 1887) provides:

"Sec. 10. No member of the common council shall be a party to, or interested in any job or contract with the city, or any department thereof; and any contract in which such member may be so interested, shall be null and void."

It is undisputed that Mr. Humphrey was a stockholder of the water company, one of its directors and its president, and a member of the common council on March 12, 1891, the date of the adoption of ordinance No. 44.   It also appears that the water company was then in default under the original ordinance No. 30½, providing for the construction of the water-

works, in that the plaintiff had failed to erect a completed plant within the time prescribed. The city was adverse to accepting the waterworks plant under these circumstances unless the plaintiff would agree to amendments to the original ordinance in the respects above set forth, which amendments are embodied in ordinance No. 44. It is to be noted that ordinance No. 44 embodies the terms and conditions constituting the agreements between the parties respecting the furnishing of water for city purposes and the compensation plaintiff was to receive therefor. It therefore contains the contract obligations of the city, imposed and assumed through the adoption of this ordinance by the common council, for it was therein provided that the city was to pay the plaintiff hydrant rentals upon the terms and at the cost therein specified. These contract obligations are manifestly such as are within the contemplation of the above quoted sec. 10, subch. XIV, of the city charter, which makes a contract null and void if any member of the common council be interested in it at the time of its adoption.

It is an admitted fact that Mr. Humphrey, at the time of the adoption of this ordinance, owned a substantial amount of the stock of the water company. Does this fact make him interested in the contract with the city within the contemplation of the foregoing charter provision? This provision was undoubtedly intended to embrace in its application to the government of the city, through its authorized agents and the members of its governing body, the general and well recognized principle of law that no man can faithfully serve two masters whose interests are in conflict. The law forbidding such persons from contracting with the municipality rests upon grounds of public policy. It is designed to prevent fraud and wrong dealing with public affairs and hence it prohibits such trustees from contracting with themselves. Such prohibitions have been held to embrace contracts by corpora-

tions where it appeared that the municipal officers and agents owned stock of such corporations. As stated in *Hardy v. Gainesville,* 121 Ga. 327, 48 S. E. 921:

"A stockholder in a private corporation clearly has an interest in its contracts; and if the city cannot make the contract with the officer himself, it cannot make it with a corporation in which such officer is a stockholder."

Authorities to the same effect are: *San Diego v. S. D. & L. A. R. Co.* 44 Cal. 106; *Dwight v. Palmer,* 74 Ill. 295; *Goodrich v. Waterville,* 88 Me. 39, 33 Atl. 659; *Santa Ana W. Co. v. San Buenaventura,* 65 Fed. 323.

The charter provision declares such contracts wholly null and void. We are persuaded that ordinance No. 44 never had any validity because Mr. Humphrey was a member of the council when it was adopted and was interested in the contract by reason of being a stockholder of the plaintiff company.

Since, then, such contract was absolutely void, is the city estopped from asserting its invalidity after receiving and accepting the public service for the city as therein provided for over seventeen years? The appellant strenuously contends that the city is estopped from denying its validity under the circumstances shown, because it insisted on the agreements embodied in ordinance No. 44 before accepting the waterworks theretofore constructed as required by the original ordinance, and because it has accepted and paid for the public service provided in the amending ordinance throughout all these years, has claimed to act under such ordinance in all matters pertaining to the maintenance and extension of the system and the furnishing of water for the city and its inhabitants, and that it thereby induced the plaintiff to maintain and operate its plant pursuant thereto and to furnish the city the service thereby required. Two important facts must be kept in the foreground in considering whether an estoppel has been shown. First, that most of the acts of the city upon

which appellant relies to work an estoppel were acts required of it under the conditions of ordinance No. 30½, which for the purposes of this case is deemed to be valid; and, secondly, that appellant must be presumed to know the law as well as the city, and that the law made ordinance No. 44 null and void on account of Mr. Humphrey's interest in the contract. Under such circumstances the observations of the court in *Swan v. Scott,* 11 Serg. & R. 155, are illuminating and of force:

"The test, whether a demand connected with an illegal transaction is capable of being enforced at law, is, whether the plaintiff requires the aid of the illegal transaction to establish his case. If a plaintiff cannot open his case, without showing that he has broken the law, a court will not assist him, whatever his claim in justice may be upon the defendant."

Since, then, the law implies that plaintiff's officers and agents had knowledge of the invalidity of ordinance No. 44, these considerations are applicable here, and plaintiff cannot under the circumstances be heard to say that it acted in perfectly good faith in erecting and maintaining the waterworks and in relying on the conduct of the city in affirmance of the validity of the ordinance when it was supplied with water for public purposes. Then again, the additional service provided under this ordinance to that required by the original ordinance No. 30½, under which the parties must be held to have proceeded, embraces only a small part of the service rendered for the city and hence is of slight operative weight in establishing an estoppel. In the light of these circumstances, the facts shown, in our opinion, do not estop the city from asserting the invalidity of ordinance No. 44, and the plaintiff's rights in its dealings with the city must rest on the terms and conditions of the original ordinance No. 30½, adopted June 12, 1890. *Ashland v. C. & N. W. R. Co.* 105 Wis. 398, 80 N. W. 1101; *Ashland v. N. P. R. Co.* 119 Wis. 204, 96 N. W.

688; *Appleton W. Co. v. Appleton,* 132 Wis. 563, 113 N. W. 44; *McMillan v. Fond du Lac,* 139 Wis. 367, 120 N. W. 240.

It is further averred that, since the plaintiff has furnished water service for city hydrants, the compensation provided therefor has been earned and the city is obligated to pay it. The ordinance provides (sec. 12) that:

"In case a test as prescribed in sec. 6 [sec. 5] should at any time be demanded by the city council and it should be found that such test cannot be satisfactorily made owing to a deficiency in said system, then the city of *Antigo* shall be free from obligation to pay the hydrant rental from ten days after date of such trial to such time as a test can be successfully made as above."

We find no such uncertainties and ambiguities in the language and meaning of these words as are suggested in appellant's behalf. The context and words clearly indicate that whenever the city demands that the waterworks system be tested, and it is found that owing to a deficiency in the system such test cannot be satisfactorily made as prescribed by sec. 5, then the city is "free from obligation to pay hydrant rental from ten days" thereafter. The context of this provision is plain and clearly expresses the obvious intention of the parties, to the effect that from ten days after subjecting the system to such a test showing a deficiency in the system to meet the calls of the test agreed upon, then the city is freed from the obligation of paying hydrant rental. The legal effect of this condition respecting the sufficiency of the system imposed on plaintiff the duty of furnishing a plant to meet the requirements of this test in order to entitle it to charge the specified hydrant rental. Hence, if it failed in performing the contract in this respect, no rental was earned by it. It therefore devolved on the plaintiff to show that the system complied with the test to entitle it to recover. This being the contractual relation between the parties, no question of forfeiture of hydrant rentals earned by the plaintiff and due

from the city can arise in this action. Performance by the plaintiff is therefore a condition precedent to its right to recover the rent demanded. *Kaukauna E. L. Co. v. Kaukauna,* 114 Wis. 327, 89 N. W. 542.

It is, however, asserted that the record does not sustain the finding of the jury to the effect that plaintiff's waterworks system was not sufficient on June 27, 1908, to comply with the test required under the ordinance. The trial court, in passing on the sufficiency of the evidence adduced, held that the evidence was sufficient to sustain the jury's findings upon the issues submitted to them. A reading of the evidence in the case leads us to the same conclusion. It is too voluminous to justify a statement of the material parts and a discussion thereof at this time. The *quantum* of proof submitted on the ultimate facts found by the jury abundantly sustains the verdict in all of its phases and hence it must stand as found by the jury. The verdict embraces the issues of fact and is properly framed to call for their determination by the jury.

The objection to the effect that the questions submitted were indefinite and uncertain is not well taken. The form and context of the questions are plain, direct, and clearly cover the disputed questions of fact at issue.

The claim that there must have been an unusual discharge of water through the service connections during the progress of the test on June 27, 1908, which plaintiff could not reasonably have anticipated, and hence that this test is not binding on it, is not well founded. The agreements of the parties contemplated that the test should be made under the ordinary operating conditions of the plant, and there is nothing to indicate that the operating conditions were not the usual ones under the pressure required to make the test.

Nor is the claim that an accidental disability in the gallery was the cause of the failure of the test sustained, for it appeared that this condition had nothing to do with the water supply during the first several hours of the test, when, as

shown by the evidence, the system did not furnish a pressure so as to comply with the prescribed test. That the water supply is an essential factor in providing and maintaining a sufficient plant is self-evident from the nature of plaintiff's undertaking to furnish a sufficient waterworks system. Unless plaintiff provided the necessary supply of water to fulfil the contractual obligations imposed by the ordinance, it cannot be said to have performed its part in furnishing the system provided for, and default in this respect is an omission on its part to perform the contract.

It is contended that the court erred in refusing to instruct the jury, as requested, respecting the burden of proof as to the issues submitted to the jury, and in the instructions given. These objections all go to the point as to whether or not the burden of proof rested on the plaintiff to show that the system as maintained and operated complied with the conditions of the contract and as to whether or not the rentals sued for were earned while the system had the efficiency required by the terms of the ordinance. The issues involved in the case must be looked into to ascertain on whom the burden of proof in respect thereto rested. The plaintiff alleges a claim for rent due for services rendered under the contract provisions of the ordinance. The defendant denies liability, alleging that the service was not rendered as provided in the contract, and therefore that nothing ever became due therefor under the contract. The situation thus presented casts the burden of proof on plaintiff of establishing its claim throughout the trial by a preponderance of the evidence. The argument that this rule does not apply because it devolved on the defendant to show under the contract provisions wherein the system was insufficient in order to be relieved from its obligations to pay hydrant rentals, rests upon an erroneous view of the terms of the agreement. As above indicated, the general rule as to liability under contracts applies here, namely, that one party to a contract cannot demand recovery on an agreement until he

shows performance thereof on his part. And so here, the plaintiff must show performance of its undertaking in order to establish a right to recover these rentals. This required it to show that the service for which payment is sought to be enforced was furnished by a waterworks system which had the efficiency required by the ordinance. The evidence shows that such was not the case for the period covered by the claims herein in litigation. The trial court properly instructed the jury respecting the burden of proof in the case.

We find no prejudicial error in the record. The issues were fully and correctly submitted to the jury and the court awarded the proper judgment in the case.

*By the Court.*—Judgment affirmed.

MARSHALL, J., dissents.

BARNES, J., took no part.