MURPHY and others, Appellants, vs. PAULL and others, Respondents.

*December 8, 1926—February 8, 1927.*

*Municipal corporations: Contract to install electric lighting service: Competitive bidding: Necessity: Irregularity: Recovery of moneys paid: Ratification by electors: Taxpayer's action: When equity will order refund of moneys paid on void contract.*

1. An action to recover money claimed to have been illegally paid out by village officials for the installation of a lighting service was properly dismissed, the electors of the village having been annually informed of what was done in connection with the

work, as required by sub. (26), sec. 61.34, Stats., and such acts having been ratified to as great an extent as the electors could ratify them.  p. 96.

2. Where a certain public utility corporation was the only one with which connection for a village electric lighting service could be made, and the electors of the village, by resolution, directed connection with it, a contract for the installation of the service was not required to be let after competitive bidding.  p. 96.

3. In an action to compel a bank to refund the amount of a loan, claimed to have been expended illegally for the installation of the lighting service, on the ground that the loan was irregular under sec. 348.28, Stats., and not ratified because it was not capable of being ratified by the electors, a court of equity will not permit the taxpayers to have *pro tanto* both the plant and the money it cost to build it, under existing circumstances, neither the bank nor the village having been the gainer or the loser by reason of any irregularity, and the evidence showing that the installation was necessary and worth what it cost. p. 97.

4. To sustain a taxpayer's action there must be shown a wrongful act of the municipality and injury to the complaining taxpayer, the action not being available where it would be grossly inequitable.  p. 97.

5. The purpose of a court of equity being to redress wrongs causing damage, reparation will not be ordered of moneys equitably though irregularly disbursed, when no damage is shown. In a taxpayer's action a penalty provided for the violation of a statute cannot be imposed, nor a past violation of a statute be punished.  p. 98.

6. Not all contracts forbidden by statute are void; and a court will usually restrain the enforcement of a municipal contract, void by reason of irregularity or because it is *ultra vires*; ordering a refund of moneys illegally paid if the municipality has not the power to spend the money for the thing done, or a loss has resulted to the taxpayers.  But a court will not order a refund where the municipality has the power to do the thing that is done and there has been no loss to the taxpayers.  p. 101.

APPEAL from a judgment of the circuit court for Dane county: AUGUST C. HOPPMANN, Circuit Judge.  *Affirmed.*

Action to recover moneys alleged to have been illegally paid out by the defendants, other than *Ridgeway State Bank* and *Mrs. Kretlow,* as officers of the village of Ridgeway in connection with the construction of an electric lighting serv-

ice in the village. The defendant bank made a loan of $3,000 to the village which was used by it to pay part of the expense in excess of the amount voted in the first instance, and *Mrs. Kretlow* bought from the bank the note issued for the loan by the village. It is claimed they are legally liable to refund the amount of the loan though it was repaid by the village before this action was begun.

In view of certain findings made by the trial judge which are fully sustained by the evidence, we do not deem it necessary to set out in detail the transactions had in connection with the construction of the lighting service nor even specify the many claims made as to the illegality of the acts of the village officers and the bank. The salient facts are that in December, 1917, the electors of the village voted $8,000 for the construction of the lighting service. It was found necessary to enlarge the service locally among the residents, and the result was that the total cost of the service exceeded somewhat $11,000. To meet the extra expense the loan of $3,000 was made from the bank and later repaid, the last payment being made March 2, 1925. The defendant *Paull* was a stockholder and officer of the defendant bank, and was president of the village of Ridgeway for the years 1918 and 1919. The defendant *Kelley* was clerk of the village for the years 1917 to 1922 inclusive, except for a short period of 1922 when his wife acted as clerk. The defendant *Farwell* was the treasurer of the village for the years 1917 to 1922 inclusive. The trial court found in substance that all the cost and expenses of installing the lighting service were read annually by the village clerk to the electors present and were ratified by them, and it dismissed the action as to all the defendants. Plaintiffs appealed.

For the appellants there was a brief by *Curkeet & Lewis* of Madison, and oral argument by *William R. Curkeet.*

For the respondents there was a brief by *Fiedler, Garrigan & Amlie* of Beloit, and oral argument by *E. C. Fiedler.*

VINJE, C. J.   It is conclusively shown that the cost of the service did not exceed its value.   It is also shown that the installation of the service was a matter of general public knowledge throughout the village, and therefore, under the rule announced in *Ellefson v. Smith*, 182 Wis. 398, 196 N. W. 834, a court of equity would refuse relief in an action like this.   But recourse to that rule need not be had as to most of the claims, for here the facts are that the electors of the village, pursuant to sub. (26), sec. 61.34, Stats., were annually informed of what was done and what moneys were expended, and they ratified the acts of the village officers. Having the power to authorize such acts in the first instance, they could ratify them after they were done.   *Koch v. Milwaukee*, 89 Wis. 220, 62 N. W. 918; *O'Loughlin v. Dorn*, 168 Wis. 205, 169 N. W. 572.

Some claim is made that there was no competitive bidding for the contract.   It appears that it was let to the Mineral Point Public Service Company and that it was the only public utility with which connection could be made, and that the electors of the village by resolution directed connection with this utility.   Under such circumstances there was no room for competitive bidding, as it is not required.   *Hurley Water Co. v. Vaughn*, 115 Wis. 470, 91 N. W. 971.

The finding of ratification is sustained by the evidence, and it so completely disposes of every issue in the case favorably to defendants except that of the illegality of the loan of $3,000 from the bank that it is needless to refer to other claims made by plaintiffs.

As to the claim of the irregularity of the loan from the bank the situation is like that in the case of *Ellefson v. Smith*, 182 Wis. 398, 196 N. W. 834.   In both cases statutes were violated, but all the transactions were fully executed, and it appears that the installation of the electric service was necessary, and that it was worth what it cost to build.   The village had the authority to install it and the electors ratified

every act they could ratify. Assuming they could not ratify the loan to the bank and that it was a void transaction under sec. 348.28, Stats., yet since the loan has been repaid and neither the bank nor the village has been a gainer or loser by reason of the irregularity, a court of equity will not, under such circumstances, require the bank to repay the loan and thus permit the taxpayers to have *pro tanto* both the plant and the money it cost to build it. *Pickett v. School Dist.* 25 Wis. 551; *Land, L. & L. Co. v. McIntyre,* 100 Wis. 245, 250, 75 N. W. 964; *Ellefson v. Smith,* 182 Wis. 398, 196 N. W. 834, and cases cited.

Speaking of the principles announced by our court in the cases of *Paul v. Kenosha,* 22 Wis. 266, and *Lafebre v. Board of Education,* 81 Wis. 660, 51 N. W. 952, the court, in *Thomson v. Elton,* 109 Wis. 589, 593, 85 N. W. 425, through Mr. Justice MARSHALL, said:

"The principle of those cases is that municipalities are bound by moral obligations as well as individuals, and that where, in case of the latter, such an obligation will give rise to a legal liability, it may have the same effect as to a municipality."

To sustain a taxpayer's action there must be shown (1) a wrongful act of the municipality and (2) injury to the complaining taxpayers. 5 McQuillin, Mun. Corp. § 2590. The action does not lie where it would be grossly inequitable to enforce the claim. 5 McQuillin, Mun. Corp. § 2582; *Farmer v. St. Paul,* 65 Minn. 176, 67 N. W. 990. In the latter case the defendant unlawfully sent some of its prisoners to a private institution for keeping, and a taxpayer brought an action to restrain the city from sending prisoners thereafter to the institution and to recover money paid for their keep. As to the latter the court said:

"Waiving the technical objection that there is no allegation in his complaint that he has requested the city to bring such an action, we are of the opinion that on the merits he is not entitled to maintain this action for the purpose of com-

pelling such repayment, for the simple reason that it would be grossly inequitable to permit him to do so."

· The city, however, was restrained from further sending prisoners to the private institution.

Courts of equity sit to redress wrongs causing damage. When no damage is shown they will not order reparation of moneys equitably though irregularly disbursed. The penalty provided for a violation of a statute cannot be imposed in a taxpayer's action. So if the taxpayers have sustained no loss by an irregular act, a court of equity has no function to perform. It may enjoin an irregular act. It may restore a loss. But it cannot punish for a past violation of the statute. To require a repayment of that which was equitably paid would be to render a court of equity an engine of injustice, as was said in *Frederick v. Douglas County,* 96 Wis. 411, 71 N. W. 798.

A brief reference to some of the cases cited by the appellants will show the distinction between them and the case at bar.

In *Humboldt v. Schoen,* 168 Wis. 414, 170 N. W. 250, there was no power to lay out the drainage district as it was attempted to be laid out; the acts of the town officers were *ultra vires.* To refuse to order a repayment would be to permit *ultra vires* acts to stand.

In *Menasha Wooden Ware Co. v. Winter,* 159 Wis. 437, 448, 150 N. W. 526, it was said:

"It is one thing to apply the doctrine to the irregular use of a power that exists, and quite another thing to create a forbidden power by a forbidden act. The former is nothing more than a waiver of the regularity of the exercise of a power which the municipality may exercise—a valid ratification of an irregular act because there was the power to exercise it regularly. The latter would be the creation by an unlawful act of a power expressly withheld."

In *Hackettstown v. Swackhamer,* 37 N. J. L. 191, the action was one to recover on an implied promise to repay

money borrowed for current expenses and used by the city. The court held that since the city had no power to make a direct promise it could not be held liable on an implied promise. *McCurdy v. Shiawassee County,* 154 Mich. 550, 118 N. W. 625, is to the same effect.

*Henry v. Dolen,* 186 Wis. 622, 203 N. W. 369, was an action to recover extra money paid a member of the county board for services. It was held that the services rendered were included in his regular per diem. The county had therefore suffered a loss by twice paying for the same services.

*Stamper v. Hopkins,* 184 Wis. 129, 197 N. W. 929, was an action to restrain the payment of town orders for road machinery. It appeared the constitutional limit of indebtedness had been voted for roads by the electors, and it was held the town officers could not exceed it. Here there was a lack of power to do the thing done.

*Bissell L. Co. v. Northwestern C. & S. Co.* 189 Wis. 343, 207 N. W. 697, was an action to recover on a contract held to be void because a treasurer and general manager of the lumber company that furnished the material to build a school house was a clerk and treasurer of the school district building it. In that case there had been no payment.

*Edward E. Gillen Co. v. Milwaukee,* 174 Wis. 362, 183 N. W. 679, was a taxpayer's action to enjoin enforcement of a contract void under the statute because of interest of an official. There the act had not been completed and payment had not been made.

*Antigo Water Co. v. Antigo,* 144 Wis. 156, 128 N. W. 888, held a charter void and unenforceable under an express statute so providing where a member of the council was interested in the corporation getting the franchise.

*Indiana R. M. Co. v. Lake,* 149 Wis. 541, 136 N. W. 178, was an action upon a town order issued pursuant to a contract held to be void because the town officers had no power to purchase road machinery.

The case of *Arbuthnot v. Kelley,* 165 Wis. 362, 162 N. W. 168, was an action to recover from a town officer the amount paid him for machinery which he furnished the town, and it appeared that it was impossible for the town to restore the machinery to him. The court held that a recovery could be had. That case was bottomed squarely upon the case of *Menasha Wooden Ware Co. v. Winter, supra,* which was an action to restrain the payment of town orders and in which the statement was made that such a contract was void. Unquestionably such contracts are usually unenforceable, but the question as to whether, when payment has been made and the town has suffered no loss, equity will compel a restoration was not discussed in the *Kelley Case.* It was evidently overlooked.

But in the case of *Blaser v. Vanden Heuvel,* 164 Wis. 98, 159 N. W. 735, written a short time previously, although an action to enforce payment of town orders bought by a town officer because the town had no money, it was held a recovery could be had.

*Quayle v. Bayfield County,* 114 Wis. 108, 89 N. W. 892, was an action to restrain the county from paying an alleged void claim, and in *Land, L. & L. Co. v. McIntyre,* 100 Wis. 245, 75 N. W. 964, the action was to recover money paid for something the county had no power to do, and it was held that in such case equitable considerations did not apply. So in *Lippert v. School Dist.* 187 Wis. 154, 203 N. W. 940, where taxpayers had no power to exceed the constitutional limit of indebtedness, the issuing of bonds in excess thereof was restrained.

In *Milquet v. Van Straten,* 186 Wis. 303, 202 N. W. 670, where a recovery of money illegally paid out by a school district was ordered, a loss to the district was shown, and it is distinguished from cases like *Thomson v. Elton,* 109 Wis. 589, 85 N. W. 425, and *Ellefson v. Smith,* 182 Wis. 398, 196 N. W. 834.

Murphy v. Paull, 192 Wis. 93.

It seems to be quite well established from our own decisions as well as from decisions in other states and in accordance with principles announced by text-book writers that in a matter in which the municipality has power to act, where there has been a completed transaction, though irregular and unlawful, a court of equity will not require restoration of the money paid unless some loss can be shown to the taxpayers. Because to do so would be grossly inequitable.

The principle running through the cases is this: (1) Not all contracts forbidden by statute are void. *Laun v. Pacific Mut. L. Ins. Co.* 131 Wis. 555, 111 N. W. 660; *Blaser v. Vanden Heuvel,* 164 Wis. 98, 159 N. W. 735. (2) Courts will usually restrain the enforcement of void municipal contracts whether void by reason of irregularity or because they are *ultra vires.* (3) Courts will order a refund of moneys illegally paid if the municipality has no power to spend the money for the thing done, as in the case of *Humboldt v. Schoen,* 168 Wis. 414, 170 N. W. 250, or where a loss has resulted to the taxpayers by reason of any irregularity in the making or execution of the contract, as in *Milquet v. Van Straten,* 186 Wis. 303, 202 N. W. 670. (4) Courts will not order a refund of moneys illegally paid out where the municipality has the power to do the thing that is done, and where no loss results to the taxpayers, even though there are statutory irregularities in the manner of doing, as in the case of *Ellefson v. Smith,* 182 Wis. 398, 196 N. W. 834.

*By the Court.*—Judgment affirmed.